RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0347P (6th Cir.)
File Name: 00a0347p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BELINDA KING, by her next
friend Scarlet King; RONNIE
JOE SWORD, by his next friend
Barbara Sword; CLAYTON
HALL, by his next friend
Darlene Mitchell,
       *Plaintiffs-Appellees/*
       *Cross-Appellants,*

   *v.*

FLOYD COUNTY BOARD OF
EDUCATION,
       *Defendant-Appellant/*
       *Cross-Appellee.*

Nos. 98-5867/5961

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
Nos. 97-00431; 97-00432; 97-00433—Joseph M. Hood,
District Judge.

Argued: April 29, 1999

Decided and Filed: October 2, 2000

Before: ENGEL, NELSON, and NORRIS, Circuit Judges.

1

———————————

**COUNSEL**

**ARGUED:**  Robert L. Chenoweth, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellant.  Jeffrey John Kuebler, RAMBICURE, MILLER & KUEBLER, Lexington, Kentucky, for Appellees.  **ON BRIEF:**  Robert L. Chenoweth, John C. Fogle, III, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellant.  Jeffrey John Kuebler, RAMBICURE, MILLER & KUEBLER, Lexington, Kentucky, for Appellees.

NELSON, J., delivered the opinion of the court, in which NORRIS, J., joined.  ENGEL, J. (pp. 11-18), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

DAVID A. NELSON, Circuit Judge.   The question presented in this case – an action brought under the statute now known as the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq*. –  is what limitations period applies to the filing of suits for attorney fees incurred in administrative proceedings where the substantive issues were resolved in favor of the claimants.  The Act itself contains no statute of limitations for such situations, and there is a circuit split as to the approach that should be followed in filling the gap.

Characterizing fee cases as ancillary to the dispute that was resolved administratively, the Seventh Circuit borrows the state law limitations period for judicial review of administrative agency decisions.  See *Powers v. Indiana Department of Education, Division of Special Education*, 61 F.3d 552 (7th Cir. 1995) (applying the 30-day limitations period prescribed by Indiana law for seeking judicial review

Whatever we might think about the wisdom of the amendment, or adding further caseload to the federal docket, or other more salutary remedies than that provided by Congress, I do not believe we may so restrict and thus frustrate the evident intent of Congress by this narrow limitation.

of administrative decisions in special education matters); *Reed v. Mokena School District No. 159, Will County, Illinois*, 41 F.3d 1153 (7th Cir. 1994) (applying the 120-day limitations period prescribed by Illinois law for suits seeking review of actions by school authorities).

The Eleventh Circuit has rejected the Seventh Circuit approach on the ground that IDEA creates an independent attorney fee claim cognizable only in the courts. See *Zipperer v. School Board of Seminole County, Florida*, 111 F.3d 847 (11th Cir. 1997) (borrowing the four-year Florida statute of limitations applicable to claims based on a statutory liability). In the case at bar the district court, finding *Zipperer* persuasive, declined to use a 30-day limitations period prescribed by Kentucky law for appeals of administrative orders and instead applied the state's five-year statute of limitations for actions "upon a liability created by statute, when no other time is fixed by the statute creating the liability." See *King v. Floyd County Board of Education*, 5 F.Supp.2d 504, 506 (E.D. Ky. 1998).

Upon *de novo* review, we conclude that the district court erred. We agree with the Seventh Circuit that the attorney fee case is ancillary to the administrative proceeding, and we shall reverse the judgment entered by the district court.

I

The plaintiffs, three special education students in the school system of Floyd County, Kentucky, challenged the Floyd County Board of Education under the IDEA when the board unilaterally changed their school placement for the year 1996-97. The placement change was made without the prior notice and consultation with the students' "Admissions and Release Committee" required by the IDEA.

Following administrative due process hearings in which the plaintiffs were represented by counsel, a hearing officer found that the IDEA had been violated in all three cases. The Board of Education appealed to the Exceptional Children Appeals

Board, Kentucky's highest administrative review level for IDEA disputes. By orders dated January 17, 1997, the Appeals Board ruled against the Board of Education and in favor of the students. The Board of Education did not seek judicial review.

On November 4, 1997, more than nine months later, the plaintiffs filed separate suits against the Board of Education in the United States District Court for the Eastern District of Kentucky, seeking attorney fees pursuant to 20 U.S.C. § 1415(e)(4)(B). This provision – now codified at 20 U.S.C. § 1415(i)(3)(B) – permits the discretionary award of reasonable attorney fees "to the parents of a child with a disability who is the prevailing party."[1] The district court consolidated the three actions pursuant to Fed. R. Civ. P. 42(a).

Conceding that each plaintiff was a "prevailing party," the Board of Education moved for summary judgment on statute of limitations grounds. The board urged adoption of the 30-day statute of limitations prescribed under Ky. Rev. Stat. 13B.140(1) for an appeal from an administrative order.[2] The

---

[1] Each of the three students brought suit through a parent as next friend. Technically, it appears, the parents should have sued in their own names, but neither the Board of Education nor the district court made an issue of this.

[2] K.R.S. 13B.140(1) provides in part as follows:

"All final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. . . ."

We have no reason to doubt that the 30-day limitations period applies to state court petitions for review of final orders of the Exceptional Children Appeals Board.

---

a civil action" in "any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." § 1415(e)(2). The complaint, and therefore the civil action, may concern "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education of such child." § 1415(b)(1)(E).

*Rowley*, 458 U.S. at 204-05; *see also Dellmuth*, 491 U.S. at 228.

In *Smith v. Robinson*, 468 U.S. 992 (1984), the Supreme Court found that the EHA, as amended, created the substantive right to a free appropriate public education and an elaborate and exclusive procedural mechanism to protect that right. The EHA did not include any express provision allowing for recovery of attorneys fees in the EHA. The Supreme Court inferred that this omission represented a balance struck by Congress between the handicapped individual's rights and the financial burden imposed upon the states by the responsibility of providing education for handicapped children. 468 U.S. at 1020. The Court found that "a plaintiff may not circumvent or enlarge the remedies available under the EHA by resort to § 504 [of the Rehabilitation Act]." 468 U.S. at 1021.

In response to *Smith v. Robinson*, Congress created an express federal cause of action for attorneys fees. On August 5, 1986, President Ronald Reagan signed into law the Handicapped Children's Protection Act of 1986 (HCPA), which created the cause of action for recovery of the attorneys fees which is at the heart of this case. Pub. L. No. 99-372, § 2, 100 Stat. 796 (1986). In the words of the Fifth Circuit, "Congress read the Supreme Court's decision in *Smith* and acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.3d 1222, 1223 (5th Cir. 1986).

In 1975 Congress amended the EHA through enactment of the Education for All Handicapped Children Act, Pub. L. 94-142, 89 Stat. 773 (1975). Congress sought to ensure that the states would provide all disabled children with a "free appropriate public education." The Supreme Court's 1982 decision in *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982), examined the EHA's statutory predecessors, the structure and purpose of the Act, as amended, and the nature of the cause of action it created. "Congress found that of the roughly eight million handicapped children in the United States at the time of enactment, one million were 'excluded entirely from the public school system' and more than one half were receiving an inappropriate education." 458 U.S. at 189 (quoting Pub. L. 94-142, § 3(b)(4), 89 Stat. at 774). The Supreme Court found that the EHA "evinces a congressional intent to bring previously excluded handicapped children into the public education systems of the States and to require [in exchange for federal funding that] the States adopt procedures which would result in individualized consideration and instruction for each child." 458 U.S. at 189. "[T]he Act guarantees to parents the right to participate in the development of an 'individualized education program' (IEP) for their handicapped child, and to challenge the appropriateness of their child's IEP in an administrative hearing with subsequent judicial review." *Dellmuth v. Muth*, 491 U.S. 223, 225 (1989).

The 1975 EHA amendments created the right to bring a civil action challenging the findings or decision of the state administrative agency to any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. Pub L. 94-142, § 615, 89 Stat. at 789 (codified at 20 U.S.C. § 1415(e)(2)). The Supreme Court in *Rowley* acknowledged the concurrent jurisdiction of the state courts.

[T]he Act permits any party aggrieved by the findings and decision of the state administrative hearings "to bring

district court denied the board's motion, holding that the appropriate limitations period was the five years prescribed by Ky. Rev. Stat. 413.120(2).[3]

After reducing the amount of the plaintiffs' request as excessive, the district court granted attorney fees and costs in the amount of $37,602.09. The Board of Education has appealed, and the plaintiffs have cross-appealed from the district court's decision to award less than the total amount claimed.

II

"Because the [IDEA] contains no specific statute of limitations, the most appropriate [state] statute of limitations must be determined by the Court." *Janzen v. Knox County Bd. of Educ.*, 790 F.2d 484, 486 (6th Cir. 1986), citing *Wilson v. Garcia*, 471 U.S. 261 (1985). "Generally, courts determine which state cause of action is most analogous to the federal cause of action. The state limitations period for that cause of action can be adopted if it is consistent with the policy of the federal cause of action." *Id.* (citations omitted). With respect to the IDEA, the selection of an appropriate state statute of limitations is done on a case-by-case basis "considering the posture of the case and the legal theories presented." *Id.* at 487.

The federal cause of action for which a limitations period must be fashioned in the case now before us is created by

---

[3]K.R.S. 413.120 provides in part as follows:

"The following actions shall be commenced within five (5) years after the cause of action accrued:

. . .

(2)  An action upon a liability created by statute, when no other time is fixed by the statute creating the liability. . . ."

statutory language that on its face might not seem applicable to the present facts at all. The reason this is so tells us something about the nature of the cause of action that has, in fact, been created.

A bit of background first. Under the IDEA, state and local education agencies that receive federal assistance are required to establish procedures under which administrative complaints may be filed with respect to, among other things, the educational placement of children with disabilities. See 20 U.S.C. §1415(a)(6). Opportunities for impartial due process hearings and administrative appeals are to be provided, see § 1415(f) and (g), and in 20 U.S.C. § 1415(i)(2) – formerly § 1415(e)(2) – the Act provides that a party aggrieved by the findings and decision made under the prescribed administrative procedures "shall have the right to bring a [state or federal] civil action with respect to the [administrative] complaint. . . ." Standing alone, this provision would not seem to confer a right to sue on the students or their parents here, because they were the prevailing parties in the administrative proceedings – they were not, in the normal sense of the words of the statute, "aggrieved by the findings and decision. . . ."

But in 1986, in the wake of a Supreme Court decision (*Smith v. Robinson*, 468 U.S. 992 (1984)) which held that the right to sue did not include a right to recover attorney fees, Congress enacted the Handicapped Children's Protection Act, P.L. 99-372, which amended the IDEA by adding a provision codified at 20 U.S.C. § 1415(e)(4)(B). As now recodified in § 1415(i)(3)(B), this provision reads, in its entirety, as follows:

> "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."

in which to permit an action for attorney fees, that a suit by that time would usually be pretty stale. What to me is more important, however, is a thirty-day statute is too grudging, especially given the ameliorative objectives of the Education of the Handicapped Act ("EHA") and its subsequent amendments, resulting in what is known today as the Individuals with Disabilities Education Act ("IDEA").

If the right to recover attorney fees were to be decided in the first instance by the administrative agency itself, I might agree with the majority here. It does not and for the very good reason: the agency does not have the power itself to enforce the right. It can only determine who was and who was not the prevailing party.

If there were some cogent reason for applying so grudging a rule, I might be inclined to it, but there is not. There is no question of disturbing the decision of the administrative agency for, if it is final, then nothing in the impending district court action impedes its progress. There is no burden upon the administrative agency to retain jurisdiction pending the attorney fees litigation. There is no delay in the relief, for it is already ordered. The case therefore reduces itself to an ordinary lawsuit for attorney fees not unlike hundreds of other suits under statute or common law contract for which limitations are normally much more extended.

By adopting the majority view we would be flattering ourselves to think that the attorney for the prevailing party will consider applying to a federal court as child's play requiring only thirty days to contemplate and to commence. The vast majority of working attorneys, especially in the areas of historically local and family concern, will rarely if ever recourse to the more remote and forbidding temples of federal law. In the common parlance, "making a federal case" implies exactly that. Federal court may be home to us but not to the ordinary lawyer who can be expected to handle most of these cases.

board approval itself, once a tentative agreement is reached, be necessary to finalize it? Can this possibly still be resolved before the thirty days runs out? And why crank up the entire and often ponderous machinery of a federal court if there is a reasonable chance to avoid it altogether?

**4.   The majority opinion ignores highly persuasive authority already existing in our own circuit and misses the essential differences between administrative and formal court proceedings with respect to time allowances recognized in *Jansen v. Knox County Bd. of Educ.*, 790 F.2d 484 (6th Cir. 1986).**

It is probably incorrect to argue that the majority is precluded by stare decisis from departing from a well established rule of the circuit without en banc hearing. As the majority correctly notes, the particular rights involved are different in each case. Nevertheless, the inherent good sense and legal reasoning of *Jansen* should persuade us to follow its principles and apply them here.

It has always seemed to me that in borrowing state limitation periods one of the most important considerations is the nature of the forum in which the cause of action is to be litigated. Jansen recognized this critical element.

Normally, administrative proceedings are less formal, and public policy favors a more speedy resolution of them so that the parties may get on with their business. More formal proceedings allow greater time in which to commence them. Kentucky law appears to favor this by the distinction which it makes between the statute of limitations in appeals from administrative agencies and those more formal ones which are expected to be litigated in the state's courts of general jurisdiction. This is reflected by its short limitation for administrative proceedings and its much longer five-year limitation in general actions upon statutes.

I suspect that most of us, as an original matter, would conclude with the majority that five years is too long a time

The only part of § 1415 that authorizes the bringing of an "action" is § 1415(i)(2)(A), which, as we have seen, does not appear to authorize the bringing of an action by the side that prevailed in the administrative proceeding. The 1986 statute also used the words "or proceeding," however, and the Supreme Court has held that similar language in the Civil Rights Act of 1964 authorizes fee awards for legal work done for the prevailing side in state administrative proceedings. See *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980). The legislative history of the fee award amendment to the IDEA makes express reference to *Gaslight*, see, *e.g.*, H.R. Rep. No. 99-296, 99th Cong., 1st Sess. 5 (1985), and in light of this legislative history we have held that the amended version of the IDEA is broad enough to authorize court suits for the recovery of legal fees incurred by parents who prevailed at the administrative level. See *Eggers v. Bullitt County School District*, 854 F.2d 892 (6th Cir. 1988). A number of other circuits have reached the same conclusion. See, *e.g.*, *Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990), and the cases cited therein at 166.

Administrative agencies do not typically have authority to award attorney fees, and Kentucky's administrative arrangements, as the parties in the case at bar agree, do not provide for fee awards. In this situation, we take it, the logic of *Eggers* is that the 1986 fee award amendment to the IDEA had the effect of making a parent who prevailed in the administrative proceedings with the assistance of counsel an "aggrieved" party, for purposes of 20 U.S.C. § 1415(i)(2), insofar as there was no award of attorney fees. As an aggrieved party, the parent is authorized to go to court to seek reasonable attorney fees. And because the only thing that gives such a parent an entree to the court is the failure to recover fees incurred in the administrative proceeding, the statutory authorization for the court to award attorney fees "[i]n any action or proceeding brought under this section" must, in this situation, be an authorization for the court to award attorney fees in the administrative proceeding itself.

The forum shifts, to be sure, when the parent goes into court, but the statute seems to treat the award of attorney fees as another phase of the administrative proceeding. If, as the wording of the statute suggests, the court may award the prevailing parent a fee "[i]n" the administrative proceeding, we think that the Seventh Circuit was correct in concluding that the fee claim is "ancillary to the underlying education dispute." *Powers*, 61 F.3d at 556.[4]

It is true that there would be no claim for attorney fees were it not for the statute. But where the statute creating the claim makes the claim part and parcel of the administrative proceeding, it seems to us that the statute makes the claim analogous to a cause of action for judicial review of the proceeding to which the claim is appended. That analogy is closer, as we see it, than the analogy involving Kentucky's general five-year statute of limitations for actions on statutory liabilities not subject to some other limitations period. It is difficult for us to conceive of a legislature intentionally authorizing the filing of a fee application up to five years after termination of the proceeding to which the application relates; it seems most unlikely, in other words, that the five-year statute was designed for ancillary proceedings of the sort in question here, as opposed to claims that can properly be characterized as independent.

---

[4]Pointing to a provision now codified at § 1415(i)(3)(A), which gives the federal district court jurisdiction of actions brought under § 1415 without regard to the amount in controversy, the plaintiffs argue that § 1415(i)(3)(A) and (B) together create a cause of action – enforceable solely in federal court – separate and distinct from the cause of action created by § 1415(i)(2). There is support for this view in the case law – see, *e.g.*, *Zipperer*, 111 F.3d at 851 ("the IDEA provides two distinguishable causes of action") – but only § 1415(i)(2) purports to confer a right to sue, and the language conferring jurisdiction without regard to the amount in controversy was part of the IDEA well before the 1986 amendment. See *J.H.R. v. Board of Education of the Township of East Brunswick*, 705 A.2d 766, 775-76 (N.J. Superior Court, App. Div. 1998), holding that actions of the sort at issue here may be brought in either state or federal court under what is now § 1415(i)(2).

B.   Within the same thirty days the LEA, with the parents' agreement, was to engage an expert "in the area of autism" whose responsibility was to provide for consultation. Suppose it didn't or the parents were dissatisfied with the expert engaged, or were not consulted?

C.   Within sixty days after the appeals board order, the ARC was ordered to obtain a "comprehensive evaluation" of the student's autism and determine an appropriate placement for the child. Suppose it didn't, or compliance was insufficient or inadequate?

The foregoing are only a few of a multitude of considerations which might reasonably occupy counsel's attention, practical and ethical considerations which must have given pause to counsel here, as they would to any counselor trying faithfully to represent a handicapped child and their family. Thirty days is simply not enough time. It seems almost certain that the ten month delay by counsel here was caused in large part by these concerns. As for the majority's concern about the five year length allowed by Kentucky law, it stands to reason that only rarely, if ever, will an attorney want to delay five years in seeking to collect attorney fees from a client, or anyone else for that matter, if he can get paid sooner.

**3.   The haste inevitably generated by a thirty-day limitation will be wasteful for the plaintiffs, the school authorities and for the district court.**

With a thirty-day limitation counsel, to protect himself and the clients, will too often be propelled into precipitate litigation which might be resolved peacefully and without recourse to a federal court. Where is the time needed, after totaling up the bill, to negotiate for its settlement out of court? Will not a protective suit at least be needed while negotiations proceed? Who will want to go the Court of Appeals arguing issues of tolling or collateral estoppel if for any reason settlement cannot be reached in thirty days? And will not

from Kentucky's administrative rules to commencement of a formal legal action in an entirely different forum. This may sometimes be sufficient, but the thirty-day limit is far too short for the wide variety of circumstances which are bound to arise in the mine run of these cases, even where diligence occurs.

The plaintiffs exercised good judgment and diligence here, even though suit was not commenced until nearly ten months after the "final order." There was still much to be done after January 17, 1997, and before plaintiffs' counsel could reasonably conclude that their legal responsibilities could safely be terminated.

**2.   The thirty-day limitation is unfair to the parties under the facts of this case.**

If, as the majority implies (but evidently does not decide), the thirty-day period began to run from the time of issuance of the decision of January 17, 1997, presumably within thirty days thereafter the parent or representative of the parent or child had to make several critical decisions in addition to computing and marshaling the evidence to justify an original action in another court.

Consider the dilemma of plaintiffs and their attorneys here.

The "final" order of January 17 had first to be analyzed in its nineteen page entirety to determine whether (a) it was in fact a final order, (b) whether the plaintiffs were the prevailing parties and, even if so, (c) whether the order itself was adequate to achieve its intended result. Given the order's complexity, this was not an easy task. Even assuming this analysis was quickly and satisfactorily accomplished, significant additional work might yet be reasonably necessary under the statutes. Under the terms of the January 17 order:

A.   The school district had thirty days ("of receipt of this decision") in which to decide whether to obey the "stay put" provisions of the January 17 order. Suppose it didn't?

We see nothing to the contrary in *Janzen*, which was not an attorney fee case. There the family of a child with special educational needs bypassed the administrative process altogether and went directly to court in an effort to obtain reimbursement of costs incurred in educating the child privately. In holding that the reimbursement claim was barred by a three-year limitations period borrowed from a Tennessee statute of limitations applicable to suits for services performed but not paid for, we rejected an argument that the claim was analogous to one subject to a 60-day limitations period prescribed by Tennessee law for appeals from agency rulings. *Janzen*, 790 F.2d at 487. There was no such analogy we said, "because the Janzens had no ruling of any kind from which to appeal." *Id*. "Had a due process hearing been held," on the other hand, the *Janzen* panel acknowledged that "the posture of the situation would have been more akin to an appeal from an agency ruling." *Id*.

The *Janzen* panel did go on to suggest, in dicta, that the 60-day period would be inapplicable to an appeal on the merits even if an administrative proceeding had been conducted first. *Id*. at 487-88. But in a subsequent education cost reimbursement case where administrative remedies had been invoked prior to the lawsuit, *Cleveland Heights-University Heights City School District v. Boss*, 144 F.3d 391, 396-97 (6th Cir. 1998), we held that the appropriate statute of limitations to borrow for the appeal was a 45-day Ohio statute, Ohio Rev. Code § 3323.05(F), that governed appeals to the state courts from final orders of reviewing officers appointed by the state board of education.

Both the *Janzen* and *Cleveland Heights-University Heights* panels attached significance to the standard of review applicable under state law where administrative orders are appealed to the courts. The state law standard of review may be relevant to the selection of an appropriate limitations period if the order appealed from is the direct product of an evidentiary hearing. But in the situation before us here, as we have explained, Congress has authorized the courts to award

attorney fees in administrative proceedings where there is typically no authority at all for fee applications to be entertained at the administrative level. The content of a standard of review that might have been applicable under other circumstances thus seems irrelevant to the task at hand here.

It remains to be considered whether adoption of a 30-day limitations period for the matter before us would be "inconsistent with federal law or policy . . . ." See *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985). We see no inconsistency.

If in some other context the parents were not represented by counsel, such a short limitations period might conflict with the IDEA goal of parental participation in the educational process. But in the present context, as the Seventh Circuit pointed out in *Powell*, the lawyer has already been hired – so in adopting a 30-day deadline for asserting a claim for the lawyer's fees, "we do not run the risk of hurting vulnerable unrepresented parents." *Powell*, 61 F.3d at 558. The *Powell* court found 30 days to be "acceptable," *id.*, and we think it is acceptable too. We are strengthened in this view by the thought that if the plaintiffs had not prevailed on the underlying educational issues until the judicial review stage, they would have had only 14 days after the entry of judgment within which to move for attorney fees. See Rule 54(d)(2)(B), Fed. R. Civ. P. Thirty days does not seem too stingy by comparison, and five years seems far too generous.

The judgment entered by the district court is **REVERSED**, and the case is **REMANDED** for entry of judgment for the defendant. The plaintiffs' cross-appeal is dismissed as moot.

_____

### DISSENT

_____

ENGEL, Circuit Judge, dissenting.  For the reasons expressed by Judge Hood in his opinion in the district court and for the reasons expressed by the Eleventh Circuit in *Zipperer v. School Bd. of Seminole County, FL*, 111 F.3d 847 (11th Cir. 1997), I would affirm the judgment of the district court. In my opinion the result reached by the majority is unfair, unsympathetic to the evident intent of Congress and entirely at odds with the careful reasoning of Chief Judge Martin in *Jansen v. Knox County Bd. of Educ.*, 790 F. 2d 484 (6th Cir. 1986).

I agree that we review the district court's determination of the applicable statute of limitations de novo, *Cleveland Heights-University Heights Sch. Dist. v. Boss*, 144 F. 3d 391, 396 (6th Cir. 1998), but that is no reason to abandon an approach which has served us so well in the past.

The majority errs, in my opinion, in at least four respects:

**1.    The thirty-day limitation is unrealistic and has the effect of chilling rights emphatically created by Congress.**

Under *Wilson v. Garcia*, 471 U.S. 261 (1985), and every other case I have seen applying the borrowing principles, the primary consideration is that the limitation adopted must not be inconsistent with the intent of Congress in creating the right in the first place. In playing down this requirement, the majority emphasizes what it concludes is the excessive five year maximum for bringing an action based upon statute, that favored by the Eleventh Circuit and, in Kentucky, by the trial judge here. This to my mind shows a greater concern for the convenience of the state agency than for the handicapped child or their parents. It assumes that because the suit is only for attorney fees that somehow, with expert legal help, it will be a simple matter to apply the thirty-day period borrowed