# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 6, 2006         Decided March 31, 2006

No. 05-7016

CARL KASEMAN, K.K., A MINOR, BY HER PARENTS AND NEXT
FRIENDS, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA,
A MUNICIPAL CORPORATION AND
CLIFFORD B. JANEY, IN HIS OFFICIAL CAPACITY,
CEO/SUPERINTENDENT, D.C. SCHOOLS,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01858)

---

*William J. Earl*, Senior Assistant Attorney General, District
of Columbia, argued the cause for appellants. With him on the
brief were *Robert J. Spagnoletti*, Attorney General and *Edward
E. Schwab*, Deputy Attorney General.

*Donna L. Wulkan* argued the cause and filed the brief for
appellees.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  The Individuals with Disabilities Education Act (IDEA) provides that a parent who successfully challenges the Act's implementation may be awarded reasonable attorneys' fees. However, the District of Columbia Appropriations Act, 2005, caps the District's payment of IDEA attorneys' fees at $4,000 per "action." This case requires us to determine whether a judicial proceeding to recover attorneys' fees incurred in a prior IDEA administrative proceeding is a separate "action" from the prior proceeding or whether the administrative and judicial proceedings together comprise a single "action." The district court held that the administrative and judicial proceedings qualify as separate "actions." We find this reading of the statutes ultimately unconvincing and therefore reverse.

I

Congress enacted the IDEA in order to "ensure that all children with disabilities" have access to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A) (2000), *amended by* 20 U.S.C. § 1400 (West Supp. 2005).[1] State and local educational agencies receiving federal assistance under the IDEA must institute procedural safeguards, *id.* § 1415(a) (2000), including providing parents of

---

[1] Congress amended the IDEA through the Individuals with Disabilities Education Improvement Act of 2004. *See* Pub. L. 108-446, 118 Stat. 2647 (2004). As these amendments did not take effect until July 1, 2005, *see* Pub. L. 108-446 § 302(a)(1), 118 Stat. at 2803, all references to the statute will be to the prior version.

a disabled child "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement" of their child, *id.* § 1415(b)(6). Once parents complain, they are entitled to "an impartial due process hearing" conducted by the agency, *id.* § 1415(f)(1), and have a right to an attorney during the hearing, *id.* § 1415(h)(1).

"Any party aggrieved by the findings and decision made" in the hearing can "bring a civil action with respect to the complaint" in either state or federal court seeking "appropriate" relief. *Id.* § 1415(i)(2)(A)-(B). Under our decision in *Moore v. District of Columbia*, 907 F.2d 165 (D.C. Cir. 1990) (en banc), a party who *prevails* at the administrative level may also seek one form of judicial relief. Although the text of the IDEA does not explicitly identify such a party as "aggrieved," *Moore* allows that party to petition a court for recovery of attorneys' fees under the IDEA's fee-shifting provision. *Id.* at 171. The fee-shifting provision states: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B) (2000). In an IDEA action involving the D.C. public schools, "an attorney who represents a party in an action or an attorney who defends an action, including an administrative proceeding," may not receive fees "in excess of $4,000 for that action." District of Columbia Appropriations Act, 2005, Pub. L. No. 108-335 § 327, 188 Stat. 1322, 1344 (2004).

II

Appellees, minor children and their parents or guardians, all prevailed in administrative complaints filed against the D.C. Public Schools under the IDEA. Appellees sought to recover attorneys' fees and costs from the District without obtaining a court-ordered fee award. The District made partial payments of

some of the claims on Appellees' invoices, but it disputed other claims and refused to make payment on some invoices entirely. On September 5, 2003, Appellees filed suit in the United States District Court for the District of Columbia, seeking an award of attorneys' fees under § 1415(i)(3)(B). The district court granted summary judgment to Appellees on July 7, 2004, entering an award of $352,714.58 plus interest. *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 32 (D.D.C. 2004) (*Kaseman I*). The court also awarded "reasonable attorney's fees and costs incurred in [the] fee litigation," *id.* at 33, which a later order quantified as $90,926.83, *Kaseman v. District of Columbia*, No. 03-1858 (D.D.C. Aug. 2, 2004) (unpublished order).

On August 17, 2004, Appellees moved for the District to be held in contempt of the July 7 order. The District argued that it was in "substantial compliance" with the order, having paid $214,907.66, and that its ability to pay the entire award was limited by the congressionally-imposed fee cap of $4,000 per attorney per action. At a hearing on October 22, 2004, the District agreed to pay an additional $29,934.82, which Appellees claimed was still due even under the fee cap. However, the District maintained that the fee cap prevented it from paying the $90,926.83 award of fees incurred during the district court litigation. On January 6, 2005, the district court ruled in favor of Appellees, finding the litigation regarding fees was a separate "action" from the underlying administrative proceeding and therefore subject to a separate fee cap. *Kaseman v. District of Columbia*, 355 F. Supp. 2d 205, 210-11 (D.D.C. 2005) (*Kaseman II*). Citing *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000), the district court felt bound by a "very strong presumption" that appropriations acts do not amend substantive law, and that the separate-actions approach was "most likely to enable plaintiffs to enforce their rights under IDEA." *Kaseman II*, 355 F. Supp. 2d at 210. The court found its approach was consistent with this Circuit's "treatment of fees-

on-fees actions as generally being distinct from the underlying claims and as being separately compensable." *Id.* (citing *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 898-99 (D.C. Cir. 2004)).

## III

The single issue presented on appeal is whether IDEA administrative proceedings and subsequent litigation regarding attorneys' fees are part of the same "action," as used in the appropriations act, or whether such litigation constitutes a new "action." Our review of this question of statutory interpretation is de novo. *See Calloway*, 216 F.3d at 5.

As an initial matter, we reject the reasoning used by the district court. While there is a presumption that appropriations acts do not modify substantive law, *id.* at 9, our reasoning in *Calloway* renders inapposite the district court's invocation of that presumption. In *Calloway*, we held that the fee cap should not be construed to alter courts' ability under the IDEA to award fees to prevailing parties, but merely to constrain the District's ability to pay those fees. *Id.* at 12. Hence, regardless of whether the term "action" in the appropriations act contemplates a separate application of the fee cap to fees-on-fees litigation, only the District's obligation to disburse appropriated funds will be affected by the fee cap. Because of our holding in *Calloway*, the courts' ability to award fees to litigants under the IDEA is not at issue here.

The district court's reliance on *Turner* is also misplaced. The issue in *Turner* was whether an award of attorneys' fees in a civil rights case could be apportioned between multiple defendants—the District and the United States. 354 F.3d at 895. We held that "when there are fractionable parts of a lawsuit not fairly attributable to other parties," the normal rule of joint and

several liability for recoverable attorneys' fees does not apply; instead, "liability for attorney's fees and expenses may be apportioned exclusively to the party who caused the plaintiff to incur those costs." *Id.* at 898-99. In *Turner*, we applied joint and several liability to the attorneys' fees for the underlying claims but found the fees-on-fees claim to be fractionable. *Id.* at 899. While such an approach presupposes that a fees-on-fees claim is analytically distinct from an initial claim for attorneys' fees, it sheds no light on whether both types of claims are part of the same "action," as the term is used in the appropriations act.

Congress amended the predecessor of the IDEA in 1986 to permit courts to award attorneys' fees in IDEA actions. *See* Handicapped Children's Protection Act of 1986, Pub. L. 99-372, 100 Stat. 796. Since that time, the IDEA's provisions have consistently been construed to authorize two types of "actions" for attorneys' fees: 1) requests for fees in suits brought to challenge adverse administrative determinations under § 1415(i)(2), i.e., suits by persons aggrieved by the results of their administrative hearings, and 2) claims for fees brought by parents who have prevailed at the administrative level. *See Moore*, 907 F.2d at 171; *see also King ex rel. King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 625 (6th Cir. 2000). Parties who prevail at the administrative level can also recover fees-on-fees, as our general rule is that the court may award additional fees for "time reasonably devoted to obtaining attorney's fees." *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982).

We have no cause to question the reasoning of *Moore* and *Environmental Defense Fund*, but the "semantic strain" between direct and implied causes of action, *Brown v. Griggsville Cmty. Unit Sch. Dist. No. 4*, 12 F.3d 681, 683 (7th Cir. 1993), creates just enough uncertainty that the scope of the fee cap is not self-evident. Whether fees-on-fees should be subject to the same fee cap as the award of fees for the underlying proceedings depends

on whether the "cause of action" implied in *Moore* should be considered part of the same overall "action" as the underlying complaint. *Moore*'s use of the term "independent cause of action" does not itself resolve this question. *Cf.* 1 Am. Jur. 2d *Actions* § 4 (2005) ("Although in some statutory contexts the term 'action' has been deemed the equivalent of 'cause of action,' the terms generally are distinguished by noting that an action is a judicial proceeding, while a cause of action is the fact or facts which give rise to the proceeding." (footnote omitted)).

As the fee cap applies only to the District, no other circuit has confronted the precise question before us. At the same time, many of our sister circuits have similarly implied a cause of action for the recovery of attorneys' fees by parties prevailing in IDEA proceedings at the administrative level. *See, e.g.*, *Zipperer ex rel. Zipperer v. Sch. Bd. of Seminole County, Fla.*, 111 F.3d 847, 851 (11th Cir. 1997); *Brown*, 12 F.3d at 683; *Eggers v. Bullitt County Sch. Dist.*, 854 F.2d 892, 898 (6th Cir. 1988). Since this cause of action is a creature of case law, the text of the IDEA does not specify an applicable statute of limitations. In the context of borrowing a state-law statute of limitations, some courts have noted that the closest state-law analogue to a petition for attorneys' fees under the IDEA would be a request for judicial review of an administrative decision. The Sixth Circuit reasoned:

> The forum shifts, to be sure, when the parent goes into court, but the statute seems to treat the award of attorney fees as another phase of the administrative proceeding. If, as the wording of the statute suggests, the court may award the prevailing parent a fee "in" the administrative proceeding, we think that . . . the fee claim is "ancillary to the underlying education dispute."

*King*, 228 F.3d at 625-26 (brackets and citation omitted). Hence, the court found the IDEA "makes the claim [for fees] analogous to a cause of action for judicial review of the proceeding to which the claim is appended." *Id.* at 626. The Seventh Circuit has also adopted this approach. *See Powers v. Ind. Dep't of Educ.*, 61 F.3d 552, 556 (7th Cir. 1995) (finding a claim for attorneys' fees to be "not . . . an independent action but . . . a claim ancillary to the underlying education dispute"). The Eleventh Circuit, on the other hand, refused to borrow a statute of limitations governing judicial review of administrative decisions. *Zipperer*, 111 F.3d at 851. The court reasoned that seeking fees in the district court is not akin to appealing an agency decision, "[b]ecause the district court, rather than the administrative agency, has jurisdiction to award fees"—i.e., the parent is not appealing any issue on which the agency has spoken or could have spoken. *Id.*

Language in our own case law reflects the tension between these two views. We have acknowledged that a request for statutory attorneys' fees raises issues "collateral to" yet "separate from" the merits of a case. *Shultz v. Crowley*, 802 F.2d 498, 501 & n.1 (D.C. Cir. 1986) (addressing whether pending fee requests affected finality under Fed. R. Civ. P. 59). We are persuaded that the rationales underlying the two diverging views are best reconciled by treating a prevailing party's fee request as part of the same "action" as the underlying educational dispute, despite being brought pursuant to an independent "cause of action." The IDEA makes an agency responsible for a child's evaluation and educational placement, not for granting fees, which are awarded in the discretion of the district court. A fee request is therefore not a direct appeal of a decision made by the agency at the administrative hearing, as it does not call into question the child's evaluation or placement. Yet the parent's entitlement to fees arises out of the same controversy and depends entirely on the administrative hearing for its existence.

Although Appellees urge the alternative interpretation—arguing that, as the district court held, a fee request qualifies as a separate "action" for purposes of the fee cap—the practical consequences of this view undermine its plausibility. Such an approach would produce disparate results for parents who prevail at the administrative level relative to parents who must resort to a civil action to prevail on their IDEA claims. Parents who *lose* at the administrative level are able to appeal the merits of that decision to the district court; they thus have no need to use the separate *Moore* cause of action to appear in a forum where they may be awarded fees. If such parents subsequently prevail in the district court, they would then be subject to a one-time application of the $4,000 fee cap, as they have prevailed in only one IDEA "action." Yet, parents who *prevail* at the administrative level may seek fees in the district court through the *Moore* implied cause of action; if their use of that cause of action would be considered a separate "action," those parents would then be able to recover an additional $4,000 in fees-on-fees, on top of their recovery of $4,000 for fees incurred at the administrative level. In effect, the litigant with the easiest task under the IDEA would be entitled to twice the fees.

As the Seventh Circuit noted in *Brown*, "[i]t would be anomalous to make the entitlement to attorney's fees depend on the stage at which a plaintiff's successful effort to enforce the rights conferred by the [IDEA] terminated." 12 F.3d at 684. We find this reasoning persuasive and believe it applies equally to the task of interpreting the fee cap. When possible, statutes should be interpreted to avoid "untenable distinctions," "unreasonable results," or "unjust or absurd consequences." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982); *Quinn v. Butz*, 510 F.2d 743, 753 (D.C. Cir. 1975). *See also Wachovia Bank v. Schmidt*, 926 S. Ct. 941, 945 (2006). We see no evidence in the IDEA or the appropriations act that Congress intended to vary parents' entitlement to fees depending on

whether the parents' rights are vindicated administratively or judicially.

Indeed, to the extent we can divine Congress's intent in enacting the fee cap, it seems more likely the District's reading of the statute would further that intent by enforcing strict limits on the amount of fees that may be recovered. That "*Calloway* clearly acknowledges Congress's intent to 'assist disabled children in D.C.' by limiting payment of attorneys' fees so that more funds can be allocated to direct services, rather than to litigating IDEA claims" is not disputed by Appellees. Br. of Appellees at 15.[2] *Cf. Calloway*, 216 F.3d at 9 (considering the possibility that Congress enacted the fee cap in order to "produce additional resources for direct educational services," yielding "a net benefit for disabled children").

## IV

We therefore hold the term "action" in the fee cap provision of the 2005 appropriations act encompasses both administrative proceedings and subsequent fee requests brought in the district court by prevailing parties. An award of fees for the underlying educational dispute and an award of fees-on-fees are thus both subject to a single application of the fee cap. The judgment of the district court is therefore reversed.

*So ordered.*

---

[2] Appellees may have conceded too much on this issue, as *Calloway* involved only rational basis review of the fee cap; we merely examined what Congress may have intended in enacting the fee cap, rather than stating what it necessarily did intend. *Calloway*, 216 F.3d at 8-9.