# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 28, 2022    Decided August 5, 2022

No. 21-7067

ANNE JEAN CANNON, DECEASED AND ESTATE OF ANNE JEAN
CANNON, BY AND THROUGH JOHN CANNON AND FRANCIS
CANNON, EXECUTORS OF THE ESTATE OF ANNE JEAN CANNON,
APPELLEES

v.

WATERMARK RETIREMENT COMMUNITIES, INC., ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:21-cv-01451)

———

*Amy Miller* argued the cause and filed the briefs for
appellants.

*Jake D. Becker* argued the cause for appellees. With him
on the brief were *Adam R. Pulver*, *Allison M. Zieve*, and *Scott
L. Nelson*.

2

No. 21-7096

CHRISTOPHER BEATY, JR. AND NICHOLE GARCIA, AS
CO-ADMINISTRATORS OF THE ESTATE OF CHRISTOPHER DAVID
BEATY, DECEASED AND IN THEIR OWN RIGHT,
APPELLEES

v.

FAIR ACRES GERIATRIC CENTER AND DELAWARE COUNTY,
APPELLANTS

————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2:21-cv-01617)

————

*Ilana H. Eisenstein* argued the cause for appellants. With
her on the briefs were *Ira L. Podheiser* and *William J. Mundy*.

*Adam R. Pulver* argued the cause for appellees. With him
on the brief were *Steven J. Pokiniewski, Michael R. Manara*,
*Allison M. Zieve*, and *Scott L. Nelson*.

Before: SRINIVASAN, *Chief Judge*, HENDERSON and
PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The Public Readiness and
Emergency Preparedness (PREP) Act provides immunity from
federal and state law claims relating to the administration of
certain medical countermeasures during a declared public
health emergency. The Secretary of Health and Human

Services (HHS) triggered the PREP Act in response to the COVID-19 pandemic, limiting suits against covered persons who administer covered countermeasures like drugs or medical devices to treat the disease. Two nursing homes bring interlocutory appeals to this court from orders in two separate cases in the United States District Court for the Eastern District of Pennsylvania. The plaintiff estate in each case claims that a defendant nursing home failed to provide adequate care and should therefore be held liable for the resident's death from COVID-19. The district courts denied the defendants' motions to dismiss based on PREP Act immunity. Defendants invoke a provision of the PREP Act that they claim gives us jurisdiction over these appeals. *See* 42 U.S.C. § 247d-6d(e)(10).

These cases raise the common threshold question whether 42 U.S.C. § 247d-6d(e)(10) empowers us to hear interlocutory appeals from decisions of out-of-circuit district courts rejecting assertions of PREP Act immunity. We conclude that the PREP Act confers interlocutory appellate jurisdiction on this court only from orders of the U.S. District Court for the District of Columbia (D.D.C.) denying motions to dismiss or for summary judgment in willful misconduct cases—a distinct, limited cause of action that subsection 247d-6d(d) of the PREP Act excepts from its broad grant of immunity and channels to the federal district court here. Because PREP Act subsection 247d-6d(e)(10) does not authorize interlocutory appeals to this court from orders of district courts elsewhere allowing other types of claims to proceed despite assertions of PREP Act immunity, we dismiss the appeals.

## BACKGROUND

## I.   PREP Act Immunity

Congress enacted the PREP Act in 2005 "[t]o encourage the expeditious development and deployment of medical

countermeasures during a public health emergency" by allowing the HHS Secretary "to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines."[1] The Act provides "covered person[s]" with "immun[ity] from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration" by the Secretary under the PREP Act "has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(a)(1). The immunity is triggered by a declaration from the Secretary identifying the threat to public health, the period during which immunity is in effect, and other particulars. *Id.* § 247d-6d(b).

The Act defines the types of "covered person" and "covered countermeasure" eligible for immunity. *Id.* § 247d-6d(i)(1), (2). A court should deny the immunity if, for example, the defendant is not a covered person, the measure administered is not covered, or the claim otherwise falls beyond the scope of the Secretary's declaration. Even as correctly applied, PREP Act immunity cuts off forms of relief that might otherwise have been available to people harmed by diagnostics, treatments, or vaccines. Cognizant of that effect, Congress also established a "Covered Countermeasure Process Fund" to compensate for such harms. *Id.* § 247d-6e(a).

The PREP Act also includes one exception to its grant of immunity for covered countermeasures administered by covered persons: In subsection (d), the Act provides for "an

---

[1] KEVIN J. HICKEY, CONG. RSCH. SERV., LSB10443, THE PREP ACT AND COVID-19, PART 1: STATUTORY AUTHORITY TO LIMIT LIABILITY FOR MEDICAL COUNTERMEASURES 1 (updated Apr. 13, 2022), https://crsreports.congress.gov/product/pdf/LSB/LSB10443; *see also* 42 U.S.C. §§ 247d-6d, 247d-6e.

exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). The immediately following provision, subsection (e), identifies the procedures for subsection (d) willful misconduct suits. The first nine paragraphs of subsection (e) describe the carefully limited procedural path that remains open to a plaintiff bringing a willful misconduct claim against a covered person. For example, such actions are initially assigned to a panel of three judges, must be filed in the D.D.C., and are subject to special pleading, discovery, and damages limitations. *Id.* § 247d-6d(e)(1)-(9). Subsection (e)'s last paragraph, (e)(10), speaks to the right of a defendant to take "an interlocutory appeal" to this court "within 30 days of an order denying a motion to dismiss or a motion for summary judgment based on an assertion of the immunity from suit conferred by subsection (a)." *Id.* § 247d-6d(e)(10). That final paragraph is at the core of this appeal: Plaintiffs contend that (e)(10), like the rest of subsection (e), applies only to willful misconduct cases brought in D.D.C. pursuant to the subsection (d) immunity exception, whereas defendants assert that it also authorizes immediate appeal here from orders by any court anywhere allowing a claim to proceed over a defendant's PREP Act objection.

In March 2020, the Secretary triggered PREP Act immunity to encourage the government, the medical profession, and other key actors to take countermeasures against the novel COVID-19 coronavirus. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,202 (Mar. 17, 2020). In that declaration, the Secretary recommended "the manufacture, testing, development, distribution, administration, and use of" covered countermeasures, such as drugs, devices, and vaccines "used to treat, diagnose, cure, prevent, or mitigate COVID-19." *Id.* at

15,201-02. He put the immunity provision in effect through October 2024 and included in the declaration the statutorily required content. *Id.* at 15,201-03 (citing 42 U.S.C. § 247d-6d). The Secretary has since amended the declaration several times.[2]

## II. Factual and Procedural Background

The defendants in both cases appeal orders of the District Court for the Eastern District of Pennsylvania denying their motions to dismiss. We take the following factual allegations from the plaintiffs' complaints as true. *See Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 278 (D.C. Cir. 2009).

### A. *Cannon v. Watermark Retirement Communities, Inc.*

In January 2020, Anne Jean Cannon was admitted to Blue Bell Place, a Pennsylvania senior living community operated by Watermark Retirement Communities, Inc., and affiliated entities, doing business as Blue Bell Place (Watermark). About three weeks into her stay at the facility, Cannon's family began noticing dramatic changes in her treatment. For example, the family saw indications that she was not regularly bathed or provided changes in clothing, and observed that the facility had failed to implement a protocol to protect Cannon from falling after she had suffered two falls. Worse still, the family suspected, based on what Blue Bell Place's Executive Director termed "suspicious" bruising and on a relative's observation

---

[2] *See Public Readiness and Emergency Preparedness Act*, Office of the Assistant Sec'y for Preparedness & Response, U.S. Dep't of Health & Hum. Servs., https://aspr.hhs.gov/legal/PREPact/Pages/default.aspx (collecting amendments).

that Cannon was "roughed up" during changing, that Blue Bell staff were physically mistreating her.

In April 2020, Cannon tested positive for COVID-19 but manifested no symptoms. Despite Cannon's lack of symptoms, a nurse assistant at Blue Bell called Cannon's son to inform him that Blue Bell planned to treat Cannon with the experimental drug hydroxychloroquine for five days. At the time, this use of hydroxychloroquine was conditionally authorized for a brief period for emergency use to treat COVID-19, but only in a hospital setting for symptomatic patients who were ineligible for a clinical trial. Cannon had previously been diagnosed with atrial fibrillation, and hydroxychloroquine was known to cause adverse reactions in patients with heart issues. Cannon's son, who was her medical power of attorney, expressly declined Blue Bell's proposal to treat her with the drug.

Staff at Blue Bell nevertheless administered Cannon hydroxychloroquine for five days, beginning April 22. Three days into her treatment, Cannon began complaining of gastrointestinal distress, headaches, and other adverse reactions. On the fifth day, Cannon's family found her lying on the floor in pain: She could barely move, was confused, and was incapable of holding a conversation. Cannon died on May 4th, reportedly of a cardiac event and COVID-19.

Cannon's estate sued the defendant facility's owners in the Montgomery County, Pennsylvania Court of Common Pleas, alleging she had suffered abuse and neglect at the facility. Among other things, the estate alleged nonconsensual administration of hydroxychloroquine. Watermark removed the action to the District Court for the Eastern District of Pennsylvania.

The operative complaint contains five Pennsylvania state law causes of action for negligent, grossly negligent, careless, and reckless actions, including failure to ensure adequate hygiene, protect Cannon from abuse, and provide adequate COVID-19 treatment, as well as the administration of hydroxychloroquine without consent and against her legal proxy's expressed wishes. Watermark moved to dismiss the complaint, asserting PREP Act immunity. Watermark argued that the Cannon estate's claims relate to the administration of hydroxychloroquine, which they maintain is a covered countermeasure under the statute. The district court denied the motion without an opinion. Watermark then filed a notice of appeal to this court, claiming a right to interlocutory appeal under the PREP Act, 42 U.S.C. § 247d-6d(e)(10).

The district court issued a memorandum opinion to supplement its order. *Cannon v. Watermark Ret. Cmtys., Inc.*, No. 21-1451, 2021 WL 3033762, n.1 (E.D. Pa. July 19, 2021). The court explained, among other things, that the emergency use authorization for hydroxychloroquine was limited to patients who were hospitalized with COVID-19 and for whom a clinical trial was not available. *Id.* at *3. Because Cannon was neither hospitalized nor evaluated for a clinical trial, the court concluded that Watermark's "administration of hydroxychloroquine sulfate *does not* fall within the clear, explicit, and limited scope of the drug's FDA emergency use authorization," so "the administration of the treatment *as Defendants used it* cannot be considered a covered countermeasure because it was not 'authorized for investigational or emergency use . . .' as required by the PREP Act." *Id.* (citation omitted) (emphasis in original). The estate did not assert that the administration of hydroxychloroquine, if it were a covered countermeasure, fell within the willful misconduct exception from PREP Act immunity.

### B.  *Beaty v. Fair Acres Geriatric Center*

Fair Acres Geriatric Center is a long-term nursing care facility located in Pennsylvania and operated by Delaware County, Pennsylvania.  Christopher David Beaty was a resident of Fair Acres for about fifteen years before the COVID-19 pandemic took hold in Spring 2020.

Due to comorbidities, Beaty was at heightened risk of serious illness and death from COVID-19.  On May 29, 2020, Fair Acres proactively tested both Beaty and his roommate for COVID-19.  On June 1, Beaty's roommate began exhibiting symptoms of the disease.  Despite those symptoms and Beaty's vulnerability, however, Fair Acres kept them in the same room while they awaited their test results.  Later the same day, Beaty developed a fever.  On June 2, Beaty tested negative, but Beaty's roommate tested positive and was moved from their room.  On June 3, Beaty's health began a sharp decline.  He was admitted to the hospital that day, where he tested positive for COVID-19 and was diagnosed with several serious health conditions, including pneumonia and acute respiratory failure. Beaty died on June 6 due to complications from COVID-19.

Beaty's estate and family members sued Fair Acres and Delaware County in the U.S. District Court for the Eastern District of Pennsylvania.  They alleged that Fair Acres' "negligent, grossly negligent, reckless, and wanton acts, omissions, and occurrences" caused Beaty's death.  Compl. ¶ 46; *see id.* ¶ 58.  Plaintiffs also alleged a broader failure by Fair Acres to prevent the spread of COVID-19 in its facility. Fair Acres, they observed, had failed to contain the virus: By June 2020, it had 222 confirmed resident cases and 94 confirmed employee cases of COVID-19.  Compl. ¶¶ 55-58. Plaintiffs claimed that Fair Acres staff had failed to properly use personal protective equipment, ensure social distancing,

create a sanitary environment, establish policies to isolate sick residents, and routinely test residents and staff. They asserted that Fair Acres had a duty to comply with various statutes and regulations that they claimed are enforceable under 42 U.S.C. § 1983 against Delaware County, which owns and operates Fair Acres. The complaint includes two section 1983 claims—one for wrongful death and a parallel survivors' claim on behalf of Beaty's family.

Fair Acres and Delaware County moved to dismiss. Most relevant here, they argued that the complaint is barred by PREP Act immunity because, they say, the claims relate to the use of a covered countermeasure—the test used to diagnose Beaty and his roommate—and the non-use of covered countermeasures such as personal protective equipment. They also argued that the complaint failed to adequately allege a violation of section 1983.

The district court denied the motion, holding that the PREP Act does not apply to the Beaty estate's claims. *Beaty v. Delaware County*, No. 21-1617, 2021 WL 4026373, at *1-2 (E.D. Pa. Aug. 5, 2021). Citing other district courts that had reached similar conclusions, the court determined that the term "covered countermeasure" does not include social distancing or quarantining, nor a defendants' failure to use countermeasures that are covered if used. *Id.* at *2. So, for example, the court found the claims that Fair Acres failed to adequately distance Beaty from his sick roommate or implement adequate protocols beyond the scope of the PREP Act. *Id.* It also held that the tests Fair Acres administered to Beaty and his roommate lacked a causal relationship to Beaty's death, *id.*, and rejected defendants' motion-stage section 1983 defenses, *id.* at *3.

11

\* \* \*

Each set of defendants filed a notice of appeal to this court, invoking the PREP Act, 42 U.S.C. § 247d-6d(e)(10), as the sole basis for our interlocutory review.

## DISCUSSION

The defendants in both cases ask us to reverse decisions of out-of-circuit district courts that denied motions to dismiss asserting PREP Act immunity. The plaintiffs defend the district court rulings, but first argue that we lack jurisdiction to hear these interlocutory appeals. We hold that we lack appellate jurisdiction, so we do not reach the parties' merits arguments.

There are two baseline rules the defendants need to overcome if we are to hear their appeals. First, "denials of motions to dismiss" typically do not constitute "final decisions" and thus "are generally not reviewable." *Oscarson v. Off. of Senate Sergeant at Arms*, 550 F.3d 1, 2 (D.C. Cir. 2008) (quoting 28 U.S.C. § 1291). Second, appeals taken from district courts generally go "to the court of appeals for the circuit embracing the district." 28 U.S.C. § 1294(1). Appeals from orders of the District Court for the Eastern District of Pennsylvania ordinarily are heard by the Third Circuit, not the D.C. Circuit.

The defendants confront both jurisdictional obstacles with a single response: They argue that paragraph (e)(10) of the PREP Act, 42 U.S.C. § 247d-6d(e)(10), overrides those general rules and gives us jurisdiction over these appeals. They are mistaken. We hold that paragraph (e)(10) supports interlocutory appeal only in a particular subset of PREP Act cases not at issue here: willful misconduct claims excepted from PREP Act immunity. *See id.* § 247d-6d(d). It does not

authorize interlocutory appeals from orders otherwise allowing claims over objections from defendants that they are immunized by the Act. We accordingly lack jurisdiction and dismiss both appeals.

I.

The PREP Act's text and structure make clear that defendants cannot rely on the disputed provision to bring their interlocutory appeal to this court. *Cf. Territory of Guam v. United States*, 141 S. Ct. 1608, 1613 (2021) (interpreting statutory provision "within the specific context of" the entire subsection (internal citation omitted and formatting modified)).

The Act, codified at 42 U.S.C. § 247d-6d, is organized into five relevant subsections. Subsection (a) establishes the immunity from suit and sets out the scope of the protection; subsection (b) explains the role and requirements of the HHS Secretary's declaration triggering the Act; subsection (c) defines "willful misconduct"; subsection (d) creates an exception to PREP Act immunity for suits based on acts of willful misconduct; and subsection (e)—entitled "Procedures for suit"—establishes the procedures for excepted subsection (d) willful misconduct suits. *See id.* § 247d-6d(a)-(e) (subsections (f) through (i) are not directly relevant here).

Again, the interlocutory appeal provision at the heart of this dispute appears at the end of subsection (e). Paragraphs 1 through 9 of subsection (e) each specifies that it applies to any "action under subsection (d)." *Id.* § 247d-6d(e)(1)-(9). Paragraph 10 (entitled "Interlocutory appeal") provides that:

> The United States Court of Appeals for the District of Columbia Circuit shall have jurisdiction of an interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss or a

> motion for summary judgment based on an assertion of the immunity from suit conferred by subsection (a) or based on an assertion of the exclusion under subsection (c)(5).

*Id.* § 247d-6d(e)(10). (Subsection (c)(5) excepts from willful-misconduct liability certain regulated activity of a manufacturer or distributor that is not at issue here).

Notably absent from paragraph (e)(10)—in contrast to paragraphs (e)(1) through (e)(9)—are words limiting (e)(10)'s applicability to any "action under subsection (d)." It is on that absence that defendants rest their appeal. No one disputes that we have jurisdiction over appeals from final judgments of the D.D.C. dismissing putative subsection (d) willful misconduct claims as not properly within that exception so barred by PREP Act immunity. *See* 28 U.S.C. § 1291. And all agree that paragraph (e)(10) gives us interlocutory appellate jurisdiction when the D.D.C. decides that otherwise covered persons administering otherwise covered countermeasures lack PREP Act immunity due to the willful misconduct exception. But defendants read paragraph (e)(10) as vesting this court with interlocutory appellate jurisdiction over far more. They contend we must entertain interlocutory appeals from orders—of any federal trial court anywhere in the United States (and perhaps of any state court)—holding that other, non-willfulness claims are not covered by PREP Act immunity. Defendants' reading would grant this court an unprecedented and impracticable supervisory role that the statute does not support.

We conclude that, "when properly read in sequence as integral parts of a whole," paragraph (e)(10) plainly is part of the "family of [subsection (d) willful misconduct procedural] provisions." *Guam*, 141 S. Ct. at 1613 (internal citation

omitted and formatting modified). As already noted, subsection (e) lays out a set of carefully controlled pretrial and trial procedures for subsection (d) willful misconduct cases, which it channels to the D.D.C. The first nine provisions set out those procedures in detail. The fact that subsection (e) generally "centers on" subsection (d) willful misconduct cases "is the first clue that" the interlocutory appeal provision is also "concerned only with" such cases. *Id.* at 1612.

The text of subsections (d)(2) and (e) support the conclusion that the interlocutory appeal provision is limited to willful misconduct cases. Titles offer clues as to statutory meaning. *See Guam*, 141 S. Ct. at 1612. Subsection (d)(2) is titled "Persons who can sue," and subsection (e), "Procedures for suit," immediately follows to spell out the procedures such persons may use. 42 U.S.C. § 247d-6d(d)(2), (e). The "suit" referenced is "[a]ny action under subsection (d)," a kind of case that may be brought only in the D.D.C. 42 U.S.C. § 247d-6d(e)(1).

The ensuing subsection (e) provisions bolster the title's indication that (e)(10)'s jurisdictional grant is limited to willful misconduct cases. Under paragraph (e)(1), a plaintiff may file such a suit exclusively within the district court already under our jurisdiction. Paragraph (e)(5) provides that subsection (d) willful misconduct actions are initially assigned to a three-judge panel for purposes of considering motions to dismiss and for summary judgment. And if the panel denies such a motion, discovery is stayed under paragraph (e)(6) pending an interlocutory appeal. The interlocutory appeal provision, subsection (e)(10), allows for appeals from denials of that same set of dispositive motions.

Strikingly, paragraph (e)(6) explicitly tethers the interlocutory appeal provision to subsection (d) cases: It

provides for an automatic discovery stay "[i]n an action under subsection (d) . . . in the event a covered person files an interlocutory appeal from the denial of [a motion to dismiss], before the court of appeals has ruled on such appeal." 42 U.S.C. § 247d-6d(e)(6). Outside of subsection (e)(10) itself, that is the only reference to interlocutory appeals in the PREP Act, and it expressly applies only to subsection (d) cases. Reading paragraph (e)(10) as confined to interlocutory appeals in subsection (d) willful misconduct cases thus treats subsection (e) as a coherent whole. It grants the right of interlocutory appeal referenced in paragraph (e)(6) with respect to the dispositive motions mentioned in paragraph (e)(5)—but it does so only in the subsection (d) willful misconduct suits described in the preceding provisions.

It makes sense that paragraph (e)(10) does not expressly state its application to any "action under subsection (d)." It is the only paragraph primarily directed at *defendants* in willful misconduct cases. Paragraphs (1) through (9), which are explicitly limited to actions under subsection (d), inform plaintiffs of special requirements to plead and prove such a case. They tell the plaintiff where to file, which law will apply, how to plead the elements of her claim, who will hear her case, how to access discovery, the limits on any award she wins, and how to avoid sanctions. 42 U.S.C. § 247d-6d(e)(1)-(9). It is natural for Congress to explain to the party driving the litigation that if she is pursuing something she wishes to characterize as an "action under subsection (d)," *id.*, special rules apply.

Paragraph (e)(10), in contrast, speaks to the defendant's opportunity for immediate appeal. And, from the perspective of a defendant looking to file such an appeal, the very reason it would make use of paragraph (e)(10) is because it thinks the case, rightly viewed, is *not* an "action under subsection (d)" so

should be barred by PREP Act immunity. The point of the defendant's appeal would be to argue that the rigorous requirements to plead or prove willful misconduct have not been met. It stands to reason that Congress excluded from paragraph (e)(10) the characterization present in the prior nine paragraphs, because including it would beg the very question defendants would be pressing on a paragraph (e)(10) appeal: whether the trial court correctly characterized the case as an "action under subsection (d)" in allowing it to proceed as such.

*Territory of Guam v. United States*, in which the Supreme Court faced a similar statutory interpretation question to this one, confirms our reading. There, the Court interpreted 42 U.S.C. § 9613(f)(3)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), "which allows '[a] person who has resolved its liability to the United States or a State' in a settlement to seek 'contribution' . . . from another responsible individual. *Guam*, 141 S. Ct. at 1611 (quoting 42 U.S.C. § 9613(f)(3)(B)). "The question [wa]s whether a party must resolve a CERCLA-specific liability in order to trigger this right, or whether a broader array of settlements involving environmental liability will do." *Id.*

Guam and the United States had entered into a consent decree regarding a dump site on Guam. *Id.* The decree fully settled the United States' Clean Water Act claims against Guam, but not any other potential claims—most importantly, no CERCLA claim. *Id.* The issue before the Court was whether Guam had a viable contribution claim against the United States under section 9613(f)(3)(B) of CERCLA for the United States' prior use of the dump site. *Id.* at 1611-12. Due to the unusual posture of the case, it was the United States—not Guam—arguing that Guam had a possible contribution claim against it. *Id.* at 1612. The United States' argument,

parallel to defendants' here, rested on a lack of language in that provision limiting to CERCLA settlements the type of resolution that would trigger contribution rights. *Id.* at 1615. Guam was, under the provision's text viewed in isolation, "[a] person who has resolved its liability to the United States" and thus entitled to seek contribution. But the Court held to the contrary. Reading the disputed text within its statutory context, it concluded that "CERCLA contribution requires resolution of a CERCLA-specific liability." *Id.* at 1611. Because the earlier settlement resolved only Clean Water Act claims, not CERCLA claims, the Court held that the contribution provision did not apply. *Id.* at 1615.

Other provisions in CERCLA are expressly limited to CERCLA claims, whereas the disputed settlement-and-contribution provision lacked any such language. *Id.* at 1614-15. The United States pointed to that absence to argue that the contribution provision was best read to reference a broader array of settlements, encompassing the parties' Clean Water Act consent decree. *Id.* at 1615. The Court nonetheless held that only CERCLA settlements triggered contribution rights. *Id.* Rejecting an invitation to draw a negative implication from the limiting words' absence from the contribution provision, as defendants would have us do here, the Court instead considered the "totality of" the subsection, in which other provisions, including the first one, were expressly limited to CERCLA contributions. *Id.* at 1612. The Court stressed that the disputed contribution provision appeared within the larger subsection, "which outlines the broader workings of CERCLA contribution." *Id.* at 1613. Any "effort to tear" the provision at issue "away from its companions based on a negative implication falter[ed] in light of the other strong textual links among them." *Id.* at 1615.

The statute at issue here has the same basic structure as the one in *Guam*. Both set forth sequentially applicable provisions as part of an interconnected decisional framework. And this case, like *Guam*, calls for interpretation of a section drafted as an itemized list in which the disputed provision lacks a qualifier expressly included in one or more earlier provisions, even as the disputed provision benefits from other textual and structural cues showing its role within the confines of the section in which it appears. *Guam* therefore shows how the PREP Act's interlocutory appeal provision should be understood as part of a "family of . . . provisions" that are "properly read in sequence as integral parts of a whole" centered on the pursuit of and defense against willful misconduct cases. *Id.* at 1613 (formatting modified and internal citation omitted).

In sum, here as in *Guam* the disputed provision is of a piece with its textual neighbors. In both cases, an initial provision serves as an anchor for the ensuing provisions, identifying the class of cases relevant to them all even where the disputed provision does not reiterate the limitation. *See id.* at 1612. Further, as the Court in *Guam* observed, "[a] contribution suit does not exist in a vacuum," but is instead aimed at apportioning specific forms of liability—most obviously, CERCLA liability. *Id.* at 1612. So, too, an interlocutory appeal right under the PREP Act does not exist in a vacuum, but provides for review of orders in a specific kind of suit—a suit sought to be pursued, as described in the preceding paragraphs, under the willful misconduct exception for persons and conduct otherwise immunized. Finally, both cases concern language that gains coherence by reference to other pieces of the statutory regime. In *Guam*, the Court considered that the provision at issue used a familiar phrase from other CERCLA provisions and included an "express cross-reference to another CERCLA provision." *Id.* Here, paragraph (e)(6)'s reference to interlocutory appeals only in the

context of subsection (d) suits suggests we should understand that limitation to apply to paragraph (e)(10). As they did in *Guam*, these various textual and structural features defeat an expansive reading of the provision at issue—here, paragraph (e)(10). *See id.* at 1615.

II.

The defendants ask us to cast aside these strong textual and contextual indicia and focus solely on the interlocutory appeal provision itself. They note that paragraph (e)(10)—unlike the prior nine paragraphs—lacks language expressly limiting it to subsection (d) cases. And "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal citation omitted). So, the argument goes, the non-parallelism of paragraph (e)(10) and the preceding nine paragraphs implies that (e)(10) is not confined to appeals from orders denying immunity under the willful misconduct exception, but grants us jurisdiction over this "interlocutory appeal by a covered person taken within 30 days of an order denying a motion to dismiss . . . based on an assertion of the immunity from suit conferred by subsection (a)." In other words, the defendants would have us hold that the provision applies to *all* denials of motions to dismiss for PREP Act immunity, not just those in willful misconduct cases under subsection (d).

That argument fails for two reasons already discussed. First, the phrase "an action under subsection (d)" is included only in the paragraphs speaking to the plaintiff who seeks to frame her case as one fitting within that exception. It is sensibly not reiterated in the final paragraph, directed to

defendants for whom the interlocutory appeal is a chance to argue for immunity precisely on the ground that the case should not be accepted as "an action under subsection (d)." A second reason to reject the defendants' reading is the stiff headwind it faces from the Supreme Court's reasoning in *Guam*, which, as already discussed, eschewed the kind of negative implication on which defendants' appeal depends.

The defendants' remaining statutory arguments are easily rejected. The *Beaty* defendants argue that Congress could not have meant to limit paragraph (e)(10) to willful misconduct claims because such claims are an exception to PREP Act immunity, so defendants cannot make "an assertion of the immunity conferred by subsection (a)" in that posture. They claim that such a holding would therefore nullify one of the statute's bases for interlocutory appeal. 42 U.S.C. § 247d-6d(e)(10). We are unpersuaded. As we explained above, when a defendant brings an interlocutory appeal pursuant to paragraph (e)(10), its position is precisely that the trial court was wrong to deny PREP Act immunity. More concretely, an appeal from a trial court's order holding that the plaintiff pleaded or presented evidence sufficient to warrant further proceedings on the willful misconduct issue *is* an "assertion of the immunity from suit conferred by subsection (a)." A willful misconduct claim under subsection (d) requires that the defendant be a covered person who used a covered countermeasure, conditions that would trigger subsection (a) immunity for a defendant who successfully appeals an order allowing willful misconduct proceedings. Our understanding of paragraph (e)(10) readily squares with the provision's reference to assertions of PREP Act immunity.

The *Beaty* defendants also argue that our reading renders superfluous paragraph (e)(10)'s designation of this court to hear interlocutory appeals in willful misconduct cases because

it goes without saying that we are the appropriate court of appeal from the D.D.C., to which the PREP Act assigns all willful misconduct claims. But there is good reason for Congress's clarification. Paragraph (e)(10) appeals are unusual in coming from three-judge trial courts. 42 U.S.C. § 247d-6d(e)(5). And ordinarily, appeals from three-judge district courts go directly to the Supreme Court per 28 U.S.C. § 1253. Absent Congress's inclusion of paragraph (e)(10) displacing section 1253, there might be ambiguity as to where to bring the appeal.

Finally, the defendants contend that our holding leads to the perverse result of allowing interlocutory appeals in willful misconduct cases, but not in garden-variety tort suits. As an initial matter, the defendants' premise—that interlocutory appeals would not be authorized from orders allowing the latter type of claims to proceed—is not established. The purported anomaly defendants assert would not arise if grounds apart from paragraph (e)(10), such as 28 U.S.C. § 1292(b) or the collateral order doctrine, *see Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), support interlocutory appeal to the appropriate circuit court from orders denying PREP Act immunity in those other types of cases.

In any event, it is entirely coherent to read the PREP Act as specifying interlocutory appeal rights only from orders allowing willful misconduct claims to proceed, thereby overriding the immunity that would otherwise apply. In providing for a willful misconduct exception, Congress included detailed forum, discovery, pleading, and proof-of-scienter provisions cabining that exception to prevent it from swallowing the rule. 42 U.S.C. § 247d-6d(e)(1)-(9). None of those heightened requirements applies to claims that evade PREP Act immunity, not due to the subsection (d) exception, but because the Act does not apply at all. Congress's decision

to specially allow interlocutory appeals in willful misconduct cases is of a piece with the other constraints it imposed only on that limited exception.

By contrast, defendants advocate an outcome that would be unprecedented and serve no discernable purpose. None of the defendants has offered any explanation why, insofar as non-willful misconduct claims are concerned, Congress would have intended appeals of decisions *denying* immunity-based motions to dismiss or for summary judgment to come to our court when appeals from decisions *granting* those same motions are routinely heard in the regional circuits. Congress's assignment of a particular set of cases to a single circuit court is typically done to encourage the development of a uniform body of law on that subject matter. For example, the Federal Circuit has jurisdiction over appeals from both interlocutory and final decisions relating to patents. 28 U.S.C. §§ 1292(c)(1), 1295(a)(1). Similarly, EPA's nationally applicable air quality regulations are reviewed exclusively in this court to ensure uniform national standards. *See* 42 U.S.C. § 7607(b)(1). Such schemes promote the consistent interpretation and application of law on the relevant issues. But defendants' approach here does the opposite. Bifurcating the adjudication of PREP Act immunity issues based on whether a district court grants or denies a motion invites discord among the courts of appeals on identical questions and subjects trial courts to potentially conflicting binding precedents.

Defendants' contention that the Act channels interlocutory appeals even in non-willful misconduct cases to this court to protect a party from "the burden of defending a lawsuit relating to its administration of covered countermeasures," *Beaty* Reply Br. at 6, accurately describes the general purpose of immediate appeals. But it does not explain why Congress would direct them *here*. Defendants contend Congress chose this court "as

the uniform arbiter of what cases should survive an immunity defense." *Id.* But, again, their reading does not accomplish that objective: Regional or state courts of appeals, not this court, decide the immunity issue on plaintiffs' appeals from trial courts' *grants* of dispositive motions.

Reading paragraph (e)(10) as authorizing interlocutory appeals to this court solely in willful misconduct cases serves the PREP Act's purpose. The rule defendants urge does not.

## III.

We are persuaded that the plain text of the PREP Act limits the interlocutory appeal provision to subsection (d) willful misconduct cases. But even if there were ambiguity as to whether the interlocutory appeal provision applies here, the consequences of holding as much would be so absurd as to counsel against jurisdiction. Our holding gains further support from the principle that, "[w]hen possible, statutes should be interpreted to avoid . . . unreasonable results, or unjust and absurd consequences." *Kaseman v. D.C.*, 444 F.3d 637, 642 (D.C. Cir. 2006) (formatting modified and internal citation omitted).

First is the workability of the hierarchical system of precedent. Built into our federal judicial system is the notion that binding precedent "for the district courts within a circuit" is set "only by the court of appeals for that circuit." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987). Under defendants' reading of the interlocutory appeal provision, however, district courts could be bound by competing opinions of two different courts of appeals—their home circuit and this circuit—on a single issue. Consider the dilemma created if we were to hold on facts like those in *Beaty* that the non-use of a covered countermeasure is not covered by PREP Act immunity, thereby affirming the

decision of the district court and allowing the case to proceed, while another district court within the Third Circuit concluded otherwise and dismissed a plaintiff's similar suit. The plaintiff in that second case would appeal that final judgment to the Third Circuit—not to us—and the Third Circuit could readily disagree with us and affirm the dismissal. The district courts would then face the intractable choice in any future case: deny the motion to dismiss and get reversed by us or grant the motion and get reversed by the Third Circuit. Defendants point to nothing suggesting Congress contemplated such an unprecedented and incoherent system.

The Federal Circuit's fix for its own variant of this problem is no solution here, given the anomaly under defendants' reading that appeals from interlocutory orders and final orders go to different circuits. "[T]o avoid the risk that district courts and litigants will be forced to select from two competing lines of authority based on which circuit may have jurisdiction over an appeal," the Federal Circuit "appl[ies] regional circuit law to nonpatent issues" and its own law to patents issues. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 28 (2001). That solution is only possible, however, because the Federal Circuit has jurisdiction over all patent appeals, meaning a district court will not face competing patent law from its regional circuit. *See* 28 U.S.C. § 1295(a)(1). Here, no such solution is available because the circuit with jurisdiction over PREP Act appeals would, on the defendants' reading, depend solely on the procedural posture and outcome of dispositive motions. The defendants' only response is that, if a circuit split arises, the Supreme Court can resolve it. We find it implausible that Congress intended district courts to be stuck in an impossible situation unless and until the Supreme

Court exercised its discretionary jurisdiction to resolve any PREP Act conflict they may face.

Relatedly, we are skeptical that Congress intended to create a revolutionary new appellate review system without clearly so stating. The defendants dispute the extent to which, under their reading, the interlocutory appeal provision would be unique. They emphasize that we often hear appeals on direct review from agency orders. They also point to appeals from Article I Tax Courts, which need not be heard in the court of appeals with jurisdiction over the region in which the court sits, 26 U.S.C. § 7482(b)(1), and a provision directing appeals from a subset of habeas cases from any district court to us, 8 U.S.C. § 1226a(b)(3). But those examples are distinguishable on the basis that only a single court of appeals is involved. Indeed, the Tax Court review provision makes explicit that if a court of appeals "permits an [interlocutory] appeal to be taken from an order," then "any subsequent review of the decision of the Tax Court in the proceeding shall be made by such Court of Appeals." 26 U.S.C. § 7482(a)(2)(C). No defendant cites any statute, and we are not aware of any, in which the question of which of two potential courts of appeals would have jurisdiction to review the same kind of order resolving the same issue would turn solely on whether the motion was granted or denied.

Finally, we note that the defendants' expansive reading would seemingly permit our interlocutory review of orders denying motions asserting PREP Act immunity *in state courts*. Recall that PREP Act immunity applies to both federal and state law claims. 42 U.S.C. § 247d-6d(a)(1). State court denials of motions to dismiss and for summary judgment regarding state-law claims seemingly could, under defendants' reading, be appealed to our court. There is, again, no indication Congress intended that extraordinary result. Indeed, all the

defendants muster is that "[t]his potential anomaly is of no import to th[ese] case[s]," which are on appeal from federal district courts. *Beaty* Reply Br. at 12. Congress may choose creative solutions to extraordinary challenges. But the outlandishness of the defendants' reading, striking into uncharted territory without any apparent purpose, further warns us off their preferred course.

\* \* \*

The statutory text and structure make plain that paragraph (e)(10) authorizes appeals only from orders allowing claims to proceed under the subsection (d) willful misconduct exception to PREP Act immunity. The pointless and confusing undertaking one would need to ascribe to Congress on a contrary reading reinforces our holding.

## CONCLUSION

For the foregoing reasons, we dismiss both appeals for lack of jurisdiction.

*So ordered.*